IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

GARRICK D. COLE,

     Plaintiff,

  v.                                     No. 1:15-cv-01105-JDB-cgc

UNITED STATES OF AMERICA,

     Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND
CERTIFYING THAT APPEAL WOULD NOT BE TAKEN IN GOOD FAITH

_____

## I.      PROCEDURAL HISTORY

Before the Court is the March 12, 2018 motion to dismiss filed by Defendant, the United

States of America.  (Docket Entry ("D.E.") 1.)

On May 4, 2015, Plaintiff, Garrick D. Cole, a federal inmate proceeding *pro se*, filed a

complaint asserting claims under 42 U.S.C. § 1983, the Federal Tort Claims Act ("FTCA"), 28

U.S.C. §§ 1346(b), 2671-2680, and *Bivens v. Six Unknown Named Agents of Federal Bureau of*

*Narcotics*, 403 U.S. 388 (1971), against Defendants, the United States of America, the United

States Marshals Service ("USMS"), and U.S. Marshal for the Western District of Tennessee

Jeffrey Holt.  (D.E. 1; *see* D.E. 15.)  After submitting the necessary filings, United States District

Judge James D. Todd granted Plaintiff permission to proceed *in forma pauperis* and assessed the

civil filing fee in accordance with the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §

1915(a)-(b).  (D.E. 6; *see* D.E. 15.)  Following Judge Todd's denial on March 23, 2016, of Cole's

motion for appointment of counsel, (D.E. 9; D.E. 4), the inmate filed a petition for a writ of

mandamus with the Sixth Circuit, (D.E. 13), which dismissed the cause "for want of prosecution"

after Plaintiff failed to pay the filing fee or timely submit a motion to proceed *in forma pauperis*, (D.E. 18).

On November 7, 2017, Judge Todd dismissed all of Plaintiff's *Bivens* and 42 U.S.C. § 1983 claims "for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1)," (D.E. 15 at PageID 85). *Bivens*, 403 U.S. 388. Accordingly, two of the defendants, the USMS and U.S. Marshal Holt, were dismissed from this action, (D.E. 15 at PageID 76-77, 82-85), and Cole's remaining claim under the FTCA against the United States was allowed to advance beyond the initial screening.[1]  (D.E. 15 at PageID 76, 84-85.)

Two weeks later, Plaintiff submitted a "Motion to Amend the Complaint and It's [sic] Supporting Documentation," (D.E. 17), which was postmarked November 21, 2017, and entered six days later, (D.E. 17-3).  Additionally, summonses were timely returned executed on January 22, 2018.  (D.E. 19.)  After this matter was reassigned pursuant to Administrative Order 2018-09 to the undersigned in February 2018, (D.E. 20), the Government timely filed a motion to dismiss on March 12, 2018, (D.E. 21).

On April 3, 2018, the Court directed the Government to respond to Cole's motion to amend his complaint and held the motion to dismiss in abeyance.  (D.E. 23.)  Defendant responded on

---

[1] The order provided the following analysis for allowing Plaintiff's FTCA claim against the Government to proceed:

> In order for the Court to have jurisdiction over Cole's FTCA claim, he must have first exhausted the claim by presenting it to the appropriate federal agency. *See* 28 U.S.C. § 2675(a).  In his complaint, Cole alleges that he sent the appropriate claim form to the USMS, where it was delivered on October 14, 2014; however, he had received no response to the claim as of the date the complaint was signed, on May 1, 2015.  [D.E. 1 at PageID 2.]  Under these circumstances, the Court will require a response from the United States.

(D.E. 15 at PageID 84-85.)

April 17, 2018, "reassert[ing] the defenses raised in that motion," summarizing the four primary arguments raised in the motion, and arguing, among other things, that the Court's "[a]cceptance of the proposed [a]mended [c]omplaint would have no impact on the pending [m]otion to [d]ismiss." (D.E. 24 at PageID 183-84; *see* D.E. 25 at PageID 192.) On April 23, 2018, the Court granted Plaintiff's pending motion, permitting him to amend his original complaint with the facts alleged in his motion to amend ("Amended Complaint") and noting that "[t]he only remaining claim in this case is Cole's FTCA claim against the United States." (D.E. 25 at PageID 190-92 & n.2 (citing D.E. 17; D.E. 1).) The Court further directed the inmate "to respond to the Government's motion to dismiss." (D.E. 25 at PageID 192.) Following the Court's grant of two extensions of time for Plaintiff to respond, (D.E. 29; D.E. 27), he submitted a filing on June 29, 2018.[2] (D.E. 30.) The Government has not filed a reply to Cole's response, and the time for doing so has passed. *See* Local R. W.D. Tenn. 12.1(c).

---

[2]In its first order granting the inmate additional time to respond, the Court explained that while "it [was] unclear whether Cole [was] requesting an extension of time to reply to Defendant's response to his already-granted motion to amend his complaint, (D.E. 24), or to respond to the Government's motion to dismiss, (D.E. 21). . . . it [was] unnecessary to determine to which Government submission the inmate intended his . . . motion to apply," "[g]iven that both of th[o]se filings by Defendant focus[ed] on Plaintiff's remaining claim under the Federal Tort Claims Act." (D.E. 27 (citing D.E. 26).) In its second order extending Cole's time to respond, the Court again emphasized that "no reply [was] warranted to Docket Entry 24—the Government's response to the inmate's motion to amend his complaint, (D.E. 17)—which the Court already granted, (D.E. 25)." (D.E. 29 at PageID 202 n.1.) Despite these clarifications, Plaintiff's most recent filing, titled as his "Reply to Defendant's Response to the Motion to Amend," stated that it is "in reply to the Defendant's response [Doc. 24] to the motion to amend [Doc. 17]." (D.E. 30 at PageID 203.) For the same reason that the Court granted the first motion for an extension of time, (D.E. 27), and because the inmate responded to all four arguments in Defendant's motion to dismiss (that were reasserted in its response to Cole's motion to amend his complaint, (D.E. 24)), the Court construes Plaintiff's June 29, 2018 submission as his response to the Government's motion to dismiss, (D.E. 21). (D.E. 30.)

## II. FACTUAL BACKGROUND

In the November 7, 2017 screening order, Judge Todd explained the factual circumstances giving rise to Plaintiff's FTCA claim:

> Cole alleges that he suffers from severe kidney failure diagnosed as end stage renal disease ("ESRD") which, if the patient does not receive a kidney transplant, must be treated with regular dialysis by either hemodialysis or peritoneal dialysis.[3] ([D.E.] 1 at [PageID] 2.) Cole states that he elected to receive peritoneal dialysis for its convenience and the greater independence it would allow him because it is self-administered. (*Id.* at [PageID] 3.)
>
> On the same day that he was released on bond, Cole was seen by a surgeon at Jackson Surgical Associates for evaluation to replace the right-side perma catheter used for his peritoneal dialysis with a "more enduring dialysis option." (*Id.*) Thereafter, on March 14, 2013, Cole states that he underwent a laparoscopic procedure to receive a Tenckhoff catheter for peritoneal dialysis. (*Id.*)
>
> On September 5, 2013, while still on bond, Cole appeared before U.S. District Judge J. Daniel Breen for sentencing, at which time Judge Breen recommended that Cole be housed in the nearest medical facility able to treat Cole's illnesses. (*Id.* at [PageID] 3-4; *see also* [D.E. 1-3 at PageID 29-30].) During the sentencing hearing, Judge Breen allowed Cole's defense attorney, Dianne Smothers, and Defendant Holt time to contact the West Tennessee Detention Facility ("WTDF") in Mason, Tennessee to determine whether that facility could address Cole's medical needs. (*Id.* at [PageID] 4; *see also* [D.E. 1-3 at PageID 29-30].) Judge Breen then heard statements from both Ms. Smothers and Defendant Holt on that issue. ([D.E. 1-3 at PageID 29-30].) However, the complaint does not set out the substance of either statement.[4] The termination of Cole's bond then was

---

[3]    Cole states that hemodialysis usually involves visits to a dialysis unit three times per week with each treatment lasting several hours. ([D.E.] 1 at [PageID] 2.) He further states that peritoneal dialysis is a process by which a large volume of liquid is inserted into a permanently implanted tube in the abdominal cavity and is repeated more or less continually as needed. (*Id.*) Cole states that with hemodialysis there can be problems with access that may require repeated surgeries, while peritoneal dialysis issues can usually be treated with antibiotics. (*Id.* at [PageID] 2-3.)

(D.E. 15 at PageID 77 n.3.)

[4]In his Amended Complaint, which was filed after the screening order, the inmate alleges that "[p]rior to giving his statement to Judge Breen, Plaintiff heard Marshal Holt openly discussing Mason jail with AUSA Wilson." (D.E. 17-2 at PageID 98.) The inmate contends that Marshal Holt said that if Cole were taken into custody that day while still receiving peritoneal dialysis, "they would have to send [him] to Mason and from there straight to the hospital and that they would have to pay for the surgeries, the hospital stay[,] and for a guard to guard him," all of which

deferred to allow him to consult with his primary care doctor, Dr. Sakar. ([D.E.] 1 at [PageID] 4.)

During the consultation with Dr. Sakar on September 9, 2013, at which Ms. Smothers also was present, Ms. Smothers allegedly informed Dr. Sakar that the federal system did not accommodate peritoneal dialysis care, which Cole contends was "misinformation[.]" (*Id.*) Dr. Sakar then consulted Jackson Surgical Associates about removing the Tenckhoff catheter that had been placed the previous March. (*Id.*) Consequently, on October 3, 2013, Cole underwent surgery to remove the Tenckhoff catheter; later the same day another surgery was performed to put in place a tunneled hemodialysis catheter. (*Id.*)

On October 9, 2013, Cole alleges that he self-surrendered to the USMS and was housed at the WTDF,[5] which was able to provide him medical treatment after his surgeries. (*Id.*) However, Cole alleges that following Judge Breen's recommendation at sentencing would have resulted in his immediate placement at the [United States Medical Center for Federal Prisoners ("USMCFP")], which he asserts is, in fact, able to accommodate peritoneal dialysis. Therefore, the Tenckhoff catheter would not have been removed and replaced by a hemodialysis catheter. (*Id.*) Cole alleges that the "needless surgeries . . . expose[d] his person to unnecessary peril of injury and pain" and caused him "excessive pain, suffering, and emotional duress." (*Id.*)

Plaintiff asserts that he was transferred to the USMCFP on or about January 11, 2014. (*Id.*) In March 2014, Dr. Wade T. Jordan, the USMCFP Clinical Director, consulted with a surgeon and recommended that Cole undergo another laparoscopic surgery to again place a catheter for peritoneal dialysis, essentially the fourth surgery for the same illness. (*Id.*) That surgery was performed on April 8, 2014. (*Id.* at [PageID] 5.) Yet a fifth surgery was performed on May 28, 2014, to remove the hemodialysis catheter. (*Id.*)

(D.E. 15 at PageID 77-79.)

## III.   STANDARDS OF REVIEW

The Government's current motion failed to cite any specific Federal Rule of Civil Procedure as grounds for dismissal. (D.E. 21.) However, several portions of Defendant's motion indicate that the United States intended for the motion to fall under Fed. R. Civ. P. 12(b).

---

"was going to cost too much money." (*Id.*) Plaintiff maintains that "Marshal Holt informed the Court [that] the Bureau of Prisons could not treat an inmate with peritoneal dialysis needs." (*Id.*)

[5]"In the complaint, Cole states that he surrendered and was confined at the 'Madison Jail.' ([D.E. 1 at PageID 4.]) However, in an attachment to the complaint, he states that it was the 'Mason Jail,' *i.e.*, the WTDF in Mason, Tennessee." (D.E. 15 at PageID 79 n.4.)

### A. *Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) governs the Government's argument that dismissal is appropriate due to Plaintiff's failure to comply with Tenn. Code Ann. § 29-26-122. *See infra* Section IV.E. The Sixth Circuit has previously analyzed multiple dismissals under Rule 12(b)(6) for failing to provide a good faith certificate pursuant to Tennessee's Medical Malpractice Act ("TMMA") and has not challenged district courts' reliance on Fed. R. Civ. P. 12(b)(6) as grounds for dismissal. *See Eiswert v. United States*, 639 F. App'x 345, 346 (6th Cir. 2016) (recognizing that "[t]he district court dismissed the case on the ground that [the] [p]laintiffs failed to comply with Tenn. Code Ann. § 29-26-122," despite their alleged substantial compliance with the statute, and remanding to address whether they satisfied § 29-26-121 and "additional unresolved issues," including dismissal under Rule 12(b)(1) for failing to comply with Tennessee's statute of repose), *remanded*, No. 2:11-CV-304, 2018 WL 3030094, at *2, 7 (E.D. Tenn. June 18, 2018) (analyzing "whether . . . [the] plaintiffs failed to file a certificate of good faith and the action should be dismissed pursuant to Tennessee Code Annotated section 29-26-122" under Rule 12(b)(6)), *appeal docketed*, No. 18-5698 (6th Cir. July 9, 2018); *Burns v. United States*, 542 F. App'x 461 (6th Cir. 2013) (per curiam). Similarly, the Eastern District of Tennessee has interpreted a motion to dismiss "pursuant to Rule 12 of the Federal Rules of Civil Procedure," without a citation to a subsection of the rule, as falling under Rule 12(b)(6). *Gazzola v. United States*, No. 1:13-cv-414-HSM-SKL, 2015 WL 11108909, at *1-3 (E.D. Tenn. Sept. 1, 2015).

Rule 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). In determining whether dismissal under the Rule is appropriate, "[t]he complaint is viewed in the light most favorable to [the plaintiff]; the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in his

favor." *Gavitt v. Born*, 835 F.3d 623, 639-40 (6th Cir. 2016) (citation omitted). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that rises 'above the speculative level' and is 'plausible on its face.'" *Luis v. Zang*, 833 F.3d 619, 625 (6th Cir. 2016) (quoting *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[I]f it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claims that would entitle [him] to relief, then . . . dismissal is proper." *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 272 (6th Cir. 2016) (quoting *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 515 (6th Cir. 1999)).

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Clariant Corp.*, No. 16-6203, 2017 WL 3270772, at *2 (6th Cir. May 17, 2017) (quoting Fed. R. Civ. P. 12(d)). "[A]s a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed. R. Civ. P. 56." *Bash v. Textron Fin. Corp. (*In re *Fair Fin. Co.*), 834 F.3d 651, 656 n.1 (6th Cir. 2016) (quoting *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)) ("However, 'when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment.'" (quoting *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007))). "Conversion occurs when a district court 'fail[s] to exclude presented outside evidence.'" *Gen. Drivers*, 2017 WL 3270772, at *2

(quoting *Max Arnold & Sons, L.L.C. v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006)). "Once 'matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.'" *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001) (quoting Fed. R. Civ. P. 12(b)).

The Sixth Circuit has "taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)." *Id.* at 344. "Under a well-established exception to Rule 12(d), courts may consider documents attached to a Rule 12(b)(6) . . . motion without converting [it] into a summary-judgment motion if the attached materials are: (i) 'referred to in the plaintiff's complaint and are central to [the] claims' or (ii) 'matters of public record.'" *Kassem v. Ocwen Loan Servicing, L.L.C.*, 704 F. App'x 429, 432 (6th Cir. 2017) (quoting *McLaughlin v. CNX Gas Co., L.L.C.*, 639 F. App'x 296, 298-99 (6th Cir. 2016)). "At this preliminary stage in litigation, courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Armengau*, 7 F. App'x at 344 (citing *Jackson*, 194 F.3d at 745). "The inclusion of attachments to a motion to dismiss that serve only to clarify the issues and that do not rebut, challenge, or contradict allegations in a complaint, does not convert a motion to dismiss into a motion for summary judgment." *Carrethers v. Speer*, 698 F. App'x 266, 270 (6th Cir. 2017) (citing *Song v. City of Elyria, Oh.*, 985 F.2d 840, 842 (6th Cir. 1993)). "[I]f extrinsic materials merely 'fill in the contours and details' of a complaint, they add nothing new and may be considered without converting the motion to one for summary judgment." *Armengau*, 7 F. App'x at 344 (quoting *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997)).

Along with its motion to dismiss, the Government included the transcript from Cole's sentencing hearing as an exhibit. (D.E. 21-1.) In support of its position, Defendant argued that

"the transcript of [the sentencing hearing] may be properly considered without converting the [motion to dismiss] to a motion for summary judgment" because "Cole directly references discussions from the sentencing hearing in his complaint." (D.E. 21 at PageID 114 n.1 (quoting *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011)).) Indeed, Plaintiff referenced and recounted the sentencing hearing multiple times in his Amended Complaint. *See Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 & n.1 (6th Cir. 2012) (determining that including "copies of the parties' contracts" with the motion to dismiss "did not convert that motion . . . because [the plaintiff] expressly referenced those contracts in its complaint" (citation omitted)); (*see, e.g.*, D.E. 17-2 at PageID 97-98; D.E. 1 at PageID 3-4.) However, the Government's only ground for dismissal being analyzed under Rule 12(b)(6) is Plaintiff's compliance with Tenn. Code Ann. § 29-26-122, which "requires that a 'certificate of good faith' indicating that a medical expert has reviewed the claims must also be filed with a medical malpractice complaint." *Reed v. Speck*, 508 F. App'x 415, 423 (6th Cir. 2012) (quoting Tenn. Code Ann. § 29-26-122(a), (c)) (adding that "failure to do so absent extraordinary cause shall result in dismissal of the complaint with prejudice" (citing Tenn. Code Ann. § 29-26-122(a),(c))). Because the sentencing hearing was held before Plaintiff would have logically filed a certificate of good faith, the transcript is not integral to the inmate's factual assertions pertaining to the TMMA. Thus, the Court will "limit[] its Rule 12(b)(6) inquiry to the four corners of the [A]mended [C]omplaint" without considering the sentencing transcript in its evaluation of Plaintiff's compliance with § 29-26-122. *Trs. of Detroit Carpenters Fringe Benefit Funds v. Patrie Constr. Co.*, 618 F. App'x 246, 255 (6th Cir. 2015); (D.E. 21-1).

Cole attached a number of exhibits to his Amended Complaint. (*See* D.E. 25 at PageID 191-92.) These exhibits can be sorted into four categories: pre-incarceration medical records,[6] medical records from his imprisonment,[7] documents pertaining to the filing of his administrative claim,[8] and his own "Sworn Affidavit in Support of Motion to Amend," (17-1). (*See* D.E. 1 at PageID 6.)

For its TMMA analysis, the Court will not consider the inmate's medical records from before and during his incarceration. *See infra* notes 6-7. While the crux of Plaintiff's Amended Complaint takes issue with Defendant's alleged shortcomings in attending to his medical needs, none of these exhibits are "integral to" Cole's allegations. In re *Fair Fin. Co.*, 834 F.3d at 656 n.1 (quoting *Commercial Money Ctr., Inc.*, 508 F.3d at 335-36).

Similarly, insofar as the Government's motion falls under Rule 12(b)(6), the Court will not consider the documents relating to the inmate's administrative filing. *See infra* note 8. While the

---

[6]These exhibits include two Jackson Surgical Associates ("JSA") medical records from March 5, 2013, (D.E. 1-1 at PageID 7-9), and September 10, 2013, (D.E. 1-1 at PageID 13-15); a JSA medical report from September 11, 2013, (D.E. 1-1 at PageID 10-11); a JSA form entitled "Upper Extremity Vein Mapping" from a September 10, 2013 exam, (D.E. 1-1 at PageID 12); two Jackson-Madison County General Hospital ("JMCGH") "Outpatient Summary" reports from March 14, 2013, (D.E. 1-4 at PageID 31-32), and October 3, 2013, (D.E. 1-4 at PageID 35-36); and two JMCGH forms entitled "Radiology Consultation Report" from March 14, 2013, (D.E. 1-4 at PageID 33), and October 3, 2013, (D.E. 1-4 at PageID 34).

[7]Such attachments consist of a USMCFP form entitled "General Surgery Consultation" from March 25, 2014, (D.E. 1-2 at PageID 16); a USMCFP form entitled "History & Physical Update" from March 27, 2014, (D.E. 1-2 at PageID 17); and two Bureau of Prisons forms entitled "Bureau of Prisons, Health Services, Clinical Encounter – Administrative Note" from April 8, 2014, (D.E. 1-2 at PageID 18, 21-23), and May 28, 2014, (D.E. 1-2 at PageID 19-20).

[8]These documents are Cole's Standard Form 95 ("SF 95") "Claim for Damage, Injury, or Death" listing "Oct. 2014" as the date of the claim, (D.E. 1-3 at PageID 24-25)—including his enclosed "Fact Sheet," (D.E. 1-3 at PageID 26-28), and portions of the docket sheet from his criminal case, 12-cr-10096, (D.E. 1-3 at PageID 29-30)—and a completed "Domestic Return Receipt" for his mailing to the USMS that was delivered on October 14, 2014, (D.E. 1-4 at PageID 37).

question of whether Plaintiff properly exhausted his administrative remedies is not disputed by either party, Judge Todd raised this issue in the November 7, 2017 screening order and instructed the United States to submit a response on this issue. (D.E. 15 at PageID 84-85); *see supra* p. 2 & note 1. Defendant failed to address this directive, however, and instead filed its motion to dismiss on four other grounds. (D.E. 21.) Furthermore, even though the FTCA's "limitations period is not jurisdictional," it is nonetheless "mandatory." *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 818 (6th Cir. 2015); *see Hawver v. United States*, 808 F.3d 693, 694 (6th Cir. 2015) (explaining that the United States Supreme Court's opinion in *United States v. Kwai Fun Wong* established "that the [FTCA]'s statute of limitations requirements in [28 U.S.C.] § 2401(b) do not implicate the subject matter jurisdiction of the federal courts" (citing 135 S. Ct. 1625, 1629 (2015))); *see supra* note 1. Accordingly, the Court will consider the inmate's administrative filing exhibits for the limited purpose of determining whether he properly exhausted his administrative remedies, *see infra* Section IV.A, and not in analyzing Plaintiff's compliance with the TMMA.

Finally, the Court will also exclude Plaintiff's "Sworn Affidavit in Support of Motion to Amend," (17-1), as it adds new factual allegations beyond the "newly amended [c]omplaint," (D.E. 17-2), that he "attached" to his motion to amend, (D.E. 17). (D.E. 17); *see Yeary*, 107 F.3d at 445 (explaining that "when affidavits do 'nothing more than verify the complaint,' and when they 'add[] nothing new, but, in effect, reiterate[] the contents of the complaint itself,' they are not truly 'materials . . . outside the pleading'" (quoting *Song*, 985 F.2d at 842)); (*see, e.g.*, D.E. 17-1 at PageID 93 ¶ 5.) The Court need not determine whether Cole's "Sworn Affidavit" suffices as an actual affidavit, (D.E. 17-1), as Defendant's motion can be sufficiently addressed using the duplicative contents of the Amended Complaint, (D.E. 17-2 at PageID 98). *See Rodriguez v. United States*, No. 1:13 CV 01559, 2015 WL 3645716, at *4 (N.D. Ohio June 10, 2015) ("Insofar

as the motion to dismiss is based on Rule 12(b)(6), the court is able to resolve that motion based on the complaint, and the briefs, without the necessity of extrinsic evidence."). Similarly, the "Sworn Affidavit" must be excluded because its new factual allegations are not central to the inmate's claim of medical malpractice and are not referenced in the Amended Complaint. (D.E. 17-1.)

### B. *Federal Rule of Civil Procedure 12(b)(1)*

In two of the Government's four arguments in favor of dismissal—that it cannot be held responsible because Mason is an independent contractor and that Defendant's actions are exempt from the FTCA as discretionary functions—the United States explicitly asserted that it should prevail due to Cole's failure to state a claim.[9] (D.E. 21 at PageID 117-19.) However, "[w]hen the circumstances of a case fall within" the FTCA's "discretionary function exception" so that the United States's sovereign immunity is not waived, "the court lacks subject matter jurisdiction." *Rich v. United States*, 119 F.3d 447, 450 (6th Cir. 1997) (citing *Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir. 1984)); *see Montex v. United States*, 359 F.3d 392, 395 (6th Cir. 2004) ("Because the United States has not waived its sovereign immunity with respect to discretionary functions, courts lack subject matter jurisdiction over acts falling within the discretionary function exception." (citation omitted)); *infra* Section IV.D.

Likewise, the Sixth Circuit affirmed "a district court's decision to grant a motion to dismiss for lack of jurisdiction" because the plaintiff "failed to plead" that "a health maintenance organization that contracts with the United States" was "a government agency or instrumentality

---

[9]Additionally, the United States maintained that its inclusion of Plaintiff's sentencing hearing transcript as an exhibit to its motion to dismiss "may be properly be considered without converting the present motion to a motion for summary judgment." (D.E. 21 at PageID 114 n.1.) To support its argument, Defendant quoted to *Rondigo, L.L.C. v. Township of Richmond*, which analyzed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). (*Id.* (quoting 641 F.3d at 680-81).)

such that the United States may be vicariously liable for [the organization]'s actions under the FTCA," thus applying the independent contractor exception. *Zanecki v. Health All. Plan of Detroit*, 577 F. App'x 394, 395-99 (6th Cir. 2014); *see Russell v. United States*, No. 3:17-CV-77-TWP-DCP, 2018 WL 1475603, at *4 (E.D. Tenn. Mar. 26, 2018) (following the defendants' motion to dismiss "FTCA claims" pursuant to Rule 12(b)(1) and 12(b)(6), electing to analyze "the independent contractor exception" under Rule 12(b)(1) because "the 12(b)(6) motion is moot if subject matter jurisdiction does not exist" (quoting *Damnjanovic v. United States Dep't of Air Force*, 135 F. Supp. 3d 601, 604 (E.D. Mich. 2015))); *infra* Section IV.C. Therefore, the Court construes the Government's discretionary function exception and independent contractor arguments as falling under Federal Rule of Civil Procedure 12(b)(1). (D.E. 21 at PageID 117-19).

As for Defendant's remaining ground for dismissal—the Government's purported sovereign immunity for misrepresentation claims under the FTCA—the Court will also analyze this issue under Fed. R. Civ. P. 12(b)(1). (D.E. 21 at PageID 120); *see infra* Section IV.B. In *Fitch v. United States*, the Sixth Circuit dismissed the plaintiff's "complaint for lack of jurisdiction" because it "'arose out of' a negligent misrepresentation," as 28 U.S.C. § 2680(h) does not "allow the courts to consider 'any claim arising out of . . . misrepresentation.'" 513 F.2d 1013, 1015-16 (6th Cir. 1975) (alteration in original) (citing *United States v. Neustadt*, 366 U.S. 696, 706 (1961)); *see Brown v. United States*, No. 06-2262 Ma/P, 2008 WL 11415834, at *3 (W.D. Tenn. Oct. 15, 2008) (granting a motion to dismiss the plaintiffs' claims of negligent and fraudulent misrepresentation under the FTCA pursuant to Fed. R. Civ. P. 12(b)(1)), *aff'd*, 355 F. App'x 901 (6th Cir. 2009); *Dyer v. United States*, 96 F. Supp. 2d 725, 737-38 (E.D. Tenn. 2000) (holding that "the [c]ourt [was] without jurisdiction to hear the [plaintiffs'] claims arising out of alleged

misrepresentations" under the FTCA due to "the misrepresentation exception and case law broadly construing the exception").

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. A district court's subject matter jurisdiction is a "threshold determination" that may be challenged by a motion under Fed. R. Civ. P. 12(b)(1). *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) (citation omitted). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge . . . the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). When a party challenges the factual existence of subject matter jurisdiction, the Court "has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* at 759-60. In a factual attack, the plaintiff's factual allegations receive no presumption of truthfulness. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Savs. and Loan Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)). When there is a disagreement over the facts, the Court must balance the conflicting evidence to determine whether subject matter jurisdiction exists, and the burden of proof in establishing subject matter jurisdiction rests upon the plaintiff. *Id.*

## IV.    ANALYSIS

"Under the FTCA, the United States has waived its sovereign immunity for claims against it for monetary damages arising from 'personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to

the claimant.'" *Matthews v. Robinson*, 52 F. App'x 808, 809 (6th Cir. 2002) (quoting 28 U.S.C. § 1346(b)).

The Government argues that "Cole's complaint must be dismissed because (1) it does not comply with Tennessee substantive law; (2) the United States is not responsible for the specific types of medical care available at Mason because Mason is an independent contractor; (3) . . . Cole's placement at Mason and the timing of his transfer to USMCFP are exempted from the Federal Tort Claims Act as discretionary functions; and (4) any claim based on an alleged misrepresentation falls outside the waiver of sovereign immunity granted by the Federal Tort Claims Act." (D.E. 21 at PageID 114-15.)

### A.  FTCA Administrative Exhaustion Requirement

Before addressing the motion to dismiss, the Court must determine whether Cole properly exhausted his administrative remedies. *See supra* pp. 10-11.

"Although sovereign immunity generally shields the government from suit, *Dep't of the Army v. Blue Fox, Inc*., 525 U.S. 255, 260 . . . (1999) (citation omitted), the FTCA, 28 U.S.C. § 2671, *et seq.*, waives that immunity for certain tort claims." *Zappone v. United States*, 870 F.3d 551, 555 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1303 (Mem.) (2018).  "[I]n order to benefit from the FTCA's waiver, a plaintiff must comply with two limitations periods":  (1) "[H]e must present an administrative claim 'in writing to the appropriate Federal agency within two years after such claim accrues," and (2) "he must bring the FTCA claim 'within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.'"  *Id.* (quoting 28 U.S.C. § 2401(b)) ("If he fails to meet either of these time constraints, his 'tort claim against the United States shall be forever barred.'" (quoting 28 U.S.C. § 2401(b))).

Under the first filing requirement, 28 U.S.C. § 2675(a) requires a plaintiff to "present the claim to the proper federal agency . . . ." *Zuber v. United States*, 229 F.3d 1155 (Table) (6th Cir. 2000). "[A] claim is presented when a claimant provides 'written notification of an incident, accompanied by a claim for money damages in a sum certain.'" *Id.* (quoting 28 C.F.R. § 14.2(a) (2000)); *see Glarner v. U.S. Dep't of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994) ("If the claimant completes the SF95, he will satisfy these requirements . . . ."); *Sherman v. United States*, 48 F. Supp. 3d 1019, 1025 (E.D. Mich. 2014) ("It is the receipt, not the sending, that satisfies the presentment requirement." (citing 28 C.F.R. §14.2)).

Cole fulfilled his administrative filing obligations. Because Plaintiff's SF 95 was received on October 14, 2014, (D.E. 1 at PageID 2), his claim needed to have accrued within the prior two years. *Zappone*, 870 F.3d at 555 (quoting 28 U.S.C. § 2401(b)). In his SF 95, the inmate listed October 3, 2013, at 2:32 p.m, as the date and time of the underlying accident, which matches the day and time that he underwent his first surgery after the sentencing hearing, where his peritoneal catheter was removed. (D.E. 1-3 at PageID 24; D.E. 1 at PageID 4.) The earliest date Plaintiff alleged in his Amended Complaint to have received any medical attention was March 5, 2013, when JSA evaluated him while he was on bond to determine whether "to replace his right Side Perma Catheter . . . . with a more enduring dialysis option." (D.E. 1 at PageID 3; *see* D.E. 21-1 at PageID 145 (indicating that Cole was released on bond in March 2013 "because of his medical condition").) Thus, even under the most lenient construction, Cole's October 14, 2014 SF 95 was filed within the FTCA's two-year limitations period. *See id.* Additionally, the Amended Complaint requested a "sum certain" of $500,000 under the FTCA. *Zuber*, 229 F.3d 1155 (quoting 28 C.F.R. § 14.2(a)); (D.E. 1-3 at PageID 28.) Therefore, the inmate properly exhausted his administrative remedies.

Likewise, Cole filed his present suit within the FTCA's limitations period. *See Zappone*, 870 F.3d at 555 (quoting 28 U.S.C. § 2401(b)). "If the [appropriate federal] agency fails to issue a final decision within six months, the claimant may elect to regard this inaction as a final denial and bring suit in federal court; however, the claimant is not required to do so and may continue to pursue the administrative process until a final decision is rendered . . . ." *Kennedy v. U.S. Veterans Admin.*, 526 F. App'x 450, 457-58 (6th Cir. 2013) (citing 28 U.S.C. § 2675(a)). Plaintiff contends that he had not received a reply to his SF 95 as of the date of his original complaint, which was filed on May 4, 2015. (D.E. 1 at PageID 2.) Given that the inmate filed his administrative claim in October 2014 and did not file his complaint until May 2015, he clearly waited the requisite six months before submitting his complaint with the Court.

Thus, Plaintiff properly exhausted his administrative remedies and filed this case with the Court in accordance with the FTCA's time requirements.

### B. FTCA Misrepresentation Exception

At sentencing, Plaintiff's counsel, Dianne Smothers, requested that he "be placed at a federal medical facility due to health issues," (D.E. 1 at PageID 3), and that he be allowed to "self report" so that he could have the peritoneal catheter removed and a hemodialysis catheter placed before his incarceration, as Cole's nephrologist indicated that "the [peritoneal] procedure . . . just absolutely cannot be done in a prison facility," (D.E. 21-1 at PageID 128). (D.E. 21-1 at PageID 128-131.) Before imposing a sentence, the Court had the following discussion with Smothers and the USMS regarding prisons' ability to facilitate peritoneal dialysis versus hemodialysis:

> THE COURT: Marshal, you have -- y'all have facilities or anything that can do that type of . . .

> MARSHAL BROWN: I'll have to check, Your Honor. I know they have a physician out at Mason. We can call out there and find out if they can handle

that. It might help if [Cole's] attorney could come downstairs and kind of explain to me what I need to explain to the people out there.

>MS. SMOTHERS: He would have to have his supplies with him. It's not -- I mean, they have a medical room there. I mean, I've been there to see clients. It's a separate medical area. It's not a sterile area, which is the problem --

(*Id.* at PageID 157-58.) After additional discussion, the Court "impose[d] a sentence of 120 months" and recommended that "Cole be housed at the nearest, closest medical facility that would be able to treat him for his kidney condition." (*Id.* at PageID 164.) As for "the matter of [Cole's] . . . release," the Court "ha[d] Mr. Cole temporarily detained," instructing "Smothers [to] confer with the Marshals about the circumstances surrounding what type of medical treatment" facilities could accommodate and explaining that it would "make a ruling on that issue depending on what the circumstances are" later that afternoon. (*Id.* at PageID 165-66.) The Court then took a recess. (*Id.* at PageID 166.)

In his Amended Complaint, Cole contends that before the U.S. Marshal gave a statement to the Court following the recess, "Plaintiff heard Marshal Holt[10] openly discussing [the] Mason jail with AUSA Wilson. Marshal Holt stated [that] if [Cole] was taken into custody, th[at] day, while yet on peritoneal, they would have to send [him] to Mason and from there straight to the hospital and that they would have to pay for the surgeries, the hospital stay[,] and for a guard to guard him[,] and that was going to cost too much money." (D.E. 17-2 at PageID 98.)

The sentencing transcript tells a similar story, albeit with more detail:

>MS. SMOTHERS: [Pretrial Services Officer Linda] Smith just called and spoke with the nurse and I think with someone else also at Mason.

---

[10]Throughout his Amended Complaint, Plaintiff refers to a U.S. Marshal at the sentencing hearing as "Marshal Holt," who is the U.S. Marshal for the Western District of Tennessee and was already dismissed from this action. (D.E. 17-2; D.E. 15 at PageID 76, 83-84; D.E. 1.) The sentencing transcript only references "Marshal Brown," who is a Deputy Marshal, and "The Marshal." (D.E. 21-1 at PageID 157, 168-70.)

It appears that given the peritoneal dialysis which he's given now, which is about every four hours daily, if he is brought into custody now[,] he would be transported immediately to the hospital at Memphis. He would stay in the hospital there, because they would have to continue in that setting, which is sterile, continue doing the [peritoneal dialysis] until the procedure is done to switch that out, get the other port in, get all that taken care of. Probably at least a week or 10 days he would simply be at -- I don't know if it's the MED, I don't know what facility. But he would be in a hospital 24/7 and be guarded there by whoever maintains that guard for prisoners at CCA --

They would -- they would then have to simply move immediately to get those procedures scheduled and done. But he would go -- they can't do anything for him at Mason with what -- the apparatus he has now, he would go directly to the hospital today and remain there until the procedures were completed.

THE COURT: Is that right, Marshal, as far as you know?

MARSHAL BROWN: Yes, sir.

THE COURT: Mr. Wilson.

MR. WILSON: I don't have any additional information.

. . .

THE COURT: . . . Now, the only problem that I guess, Marshal, and maybe you can address this, is that if and when -- when he has this procedure at the hospital, if he's got to be in a -- I mean, if the doctors say he's got to be in a medical facility, I mean I know there is a delay, generally a delay on designation of where a person is supposed to go.

So is that going to present a problem for the Marshal Service as to where he's, Mr. Cole would be housed in the interim?

. . .

THE COURT: Yes, sir. In other words, after that has been done, he's got the port changed, all that type of thing, and everything --

THE MARSHAL: After the port is changed he'll be transported however many times a week, three times a week to DaVita. But in checking with DaVita, who handles Mason's dialysis now, they are not even set up to do what he has right now. They would not even attempt to let him come there and have it done.

. . .

THE MARSHAL: So basically what we're talking about is, you know, 24/7 guards for up to possibly two weeks in a hospital.

THE COURT: At the hospital?

THE MARSHAL: Yes, sir.

THE COURT: But once that is completed, would he then be transferred to a medical facility? Is that what would have to be done?

THE MARSHAL: He would go to Mason then awaiting designation to where he went. And they would transport him to dialysis at DaVita.

(D.E. 21-1 at PageID 167-70.) Because Cole was supposed to see his doctor that afternoon following the hearing, the Court decided to "defer [its] decision about termination of his bond at th[at] point to allow him to . . . see his doctor." (*Id.* at PageID 173.)

Although the Amended Complaint does not mention the Court's final decision regarding Cole's release on bond, the inmate asserts that his doctor at JSA scheduled surgeries for the removal of his peritoneal catheter and the placement of a hemodialysis catheter, which were both performed on October 3, 2013, before "Plaintiff self-surrendered to the United States Marshals Service" on October 9, 2013. (D.E. 1 at PageID 4.) He contends that he was then "confined at Madison Jail[,] then capable of facilitating his medical conditions after the two additional . . . surgeries." (*Id.*); *see supra* note 5.

In its motion to dismiss, the United States argued that "if . . . Cole premises his claim on the notion that he was misled as to the dialysis port(s) he could use while in custody, and that caused him to seek out additional surgeries, the United States has not waived its sovereign immunity," and "any claim based on alleged misrepresentation would not be cognizable under the FTCA." (D.E. 21 at PageID 120-21.)

Plaintiff's response appears to assert that he should have been able to self-report to a prison that could have accommodated peritoneal dialysis with the catheter that he had at the time of sentencing, as the Court had recommended at sentencing that he be placed at a medical facility.

(D.E. 30 at PageID 205; D.E. 21-1 at PageID 164.)  He contends that the USMS "avoided the expenses" of having to pay for the medical treatments that he underwent between the sentencing hearing and his incarceration.  (D.E. 30 at PageID 203; D.E. 17-2 at PageID 98.)  Therefore, because "Medicare does not immediately cover hemodialysis treatments," which Cole would have received between his October 3, 2013 surgeries and October 9, 2013 incarceration, "Plaintiff was in dire straits for care," thus "effectively plac[ing] him in jeopardy of life and limb."  (D.E. 30 at PageID 203-04.)

"Claims based on misrepresentation and deceit . . . are specifically excluded by the FTCA." *Jarrell v. United States*, 107 F.3d 11 (Table) (6th Cir. 1997) (citing *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991)).  "Under 28 U.S.C. § 2680(h), Congress has chosen not to allow the courts to consider 'any claim arising out of . . . misrepresentation.'"  *Fitch*, 513 F.2d at 1015 ("It is settled that this exception includes claims arising out of negligent as well as intentional misrepresentation." (citing *Neustadt*, 366 U.S. at 706)).

In *Fitch*, the Sixth Circuit analyzed a "complaint [that] 'arose out of' a negligent misrepresentation. . . . when Government agents misrepresented [the plaintiff]'s obligation to enter the Army."  513 F.2d at 1016.  In granting the United States sovereign immunity, the *Fitch* court relied on *United States v. Neustadt*, where the Supreme Court explained that "[w]hile [it] d[oes] not condone carelessness by government employees in gathering and promulgating such information, neither can [it] justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability."  *Id.* (quoting *Neustadt*, 366 U.S. 710-11); *see Jarrell*, 107 F.3d 11 (finding that claims "based on the allegation of a cover-up" "by military medical personnel" were "specifically excluded by the FTCA" (citation omitted)).

Insofar as Cole alleges that the USMS misrepresented the medical treatment that he might need to undergo prior to being taken into custody or that may be available upon his incarceration, the United States is shielded from liability under the FTCA. *See Rogers v. Fed. Bureau of Prisons*, 105 F. App'x 980, 984 (10th Cir. 2004) (concluding that the FTCA "clearly bar[red]" the plaintiff's "claim arising from misrepresentation," where "he relied upon" the Government's "false information to his financial detriment" by "hiring a parole representative" following the defendants' failure "to provide accurate information regarding his eligibility for parole"); *Walton v. United States*, 997 F. Supp. 2d 808, 812 (N.D. Ohio 2014) (construing the plaintiff's FTCA claims, which stemmed from surgery to amputate his foot, as "arising out of . . . misrepresentation and deceit," despite the plaintiff's "alleg[ations] that the amputation was in error, that the [United States Department of Veterans Affairs] did not provide adequate medical treatment, and that [it] failed to maintain the appropriate standard of care" (citing 28 U.S.C. § 2680(h))); *see Dyer*, 96 F. Supp. 2d at 737-38 (dismissing the plaintiff's "claims arising out of the Government's alleged withholding or misrepresentation of information concerning working conditions at [a government nuclear facility]" as "barred by the misrepresentation exception to the [c]ourt's jurisdiction under the FTCA").

### C.  FTCA Independent Contractor Exception

Defendant asserted that "Cole's complaint must . . . fail because the United States is not the proper party against whom to bring a complaint regarding the specific medical services available at Mason."[11]  (D.E. 21 at PageID 117 & n.3 (adding that the inmate "does not appear to have any complaints regarding the treatment options available at [the] USMCFP" and that he

---

[11]Plaintiff responded summarily that he "does not claim any liability against the West Tennessee Detention Facility, Mason that would invoke the independent contractor exception." (D.E. 30 at PageID 203.)

seems to only oppose "the surgeries he received while in custody at that facility" because they "would not have been necessary had he not first been housed at Mason").)  Arguing that pursuant to the FTCA, "the United States may only be held liable for actions taken by federal employees," the Government maintains that it thus "cannot be held liable for the availability of medical services at Mason because that facility is an independent contractor."  (D.E. 21 at PageID 117 (citing *United States v. Orleans*, 425 U.S. 807, 813-14 (1976)).)

"The FTCA defines 'employee of the Government' to include 'officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.'"  *Zanecki*, 577 F. App'x at 397 (quoting 28 U.S.C. § 2671) ("The term 'federal agency' includes 'corporations primarily acting as instrumentalities or agencies of the United States, *but does not include any contractor with the United States*.'" (emphasis in original) (quoting 28 U.S.C. § 2671)).  In contrast, "[i]ndependent contractors are not government employees."  *Ayon v. Ne. Ohio Corr. Ctr.*, 478 F. App'x 999, 1000 (6th Cir. 2012) (per curiam) (citing *Orleans*, 425 U.S. at 813-14).

"A 'critical element' in determining whether an entity is a federal agency or instrumentality, as opposed to an independent contractor, is the existence of federal authority 'to control the detailed physical performance' of the entity."  *Zanecki*, 577 F. App'x at 397 (quoting *Orleans*, 425 U.S. at 814) ("[T]he question . . . is not whether the [entity] receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." (quoting *Orleans*, 425 U.S. at 815)).  In a 2012 case involving an FTCA claim asserted by a *pro se* prisoner who "was not treated for gas inhalation" while incarcerated at a facility "owned and operated by Corrections Corporation of America"

("CCA"), the Sixth Circuit held that "the United States is not liable for the acts of Corrections Corporation or its employees" because they were independent contractors. *Ayon*, 478 F. App'x at 1000 (citing *Orleans*, 425 U.S. at 816) (explaining that "[t]he Federal Bureau of Prisons has contracted with Corrections Corporation to house and provide services to federal prisoners"); *see Russell*, 2018 WL 1475603, at *4-5 (holding that where a federal prisoner "challenge[d] the lack of medical care he received while in custody at" two county jails, the United States was shielded from liability under the FTCA by the independent contractor exception).

Likewise, the WTDF in Mason, Tennessee is a CCA facility. (*See* D.E. 21-1 at PageID 167.) Plaintiff has not asserted any specific facts indicating that the WTDF's or USMCFP's "day-to-day operations [were] supervised by the Federal Government" or, more specifically, the USMS. *Zanecki*, 577 F. App'x at 397 (quoting *Orleans*, 425 U.S. at 815) (affirming the dismissal of the plaintiff's FTCA claims, finding that he "failed to allege in his amended complaint how the United States control[led] the 'detailed physical performance' or the 'day-to-day operations' of [a health maintenance organization that contracts with the United States]"). Thus, Defendant correctly asserted that "the Mason facility is an independent contractor," as "[t]he United States Marshals Service does not control the day-to-day activities at, or the medical services provided by, Mason, and does not supervise its employees." (D.E. 21 at PageID 117-18); *see Russell*, 2018 WL 1475603, at *4-5.

### D. FTCA Discretionary Function Exception

Plaintiff takes issue with his placement by the USMS at the WTDF due to its "inability to provide" for peritoneal dialysis, (D.E. 1 at PageID 4), but the Government argues that it is immune from such a claim under the FTCA's discretionary function exception. (D.E. 21 at PageID 118-19.)

The discretionary function exception bars liability under the FTCA for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Kohl v. United States*, 699 F.3d 935, 940 (6th Cir. 2012) (quoting 28 U.S.C. § 2680(a)). "Determining whether a claim falls within the discretionary-function exception involves a two-step test." *Id.* at 940 (citing *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)).

First, the Court must make "a determination of whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice." *Id.* (quoting *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997)) ("If . . . there was room for judgment or choice in the decision made, then the challenged conduct was discretionary." (citing *Rosebush*, 119 F.3d at 441)). "Even where government action is taken on the day-to-day operational level, and implements broader governmental objectives, if that action involves choice or judgment that is 'susceptible to policy analysis,' then it falls within the discretionary-function exception." *Id.* at 940 (quoting *Gaubert*, 499 U.S. at 325) (explaining that courts "also consider the fact that '[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion'" (quoting *Sharp ex rel. Estate of Sharp v. United States*, 401 F.3d 440, 443 (6th Cir. 2005))).

Next, if "the challenged conduct was discretionary," then the Court must analyze the second prong, which requires it "to evaluate 'whether the conduct is of the kind that the discretionary function exception was designed to shield' from liability." *Id.* (quoting *Rosebush*, 119 F.3d at 441) (reasoning that "[t]he discretionary-function exception is meant 'to prevent

judicial second-guessing of . . . administrative decisions grounded in social, economic, and political policy through the medium of an action in tort'" (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984))).

Plaintiff correctly asserted that 18 U.S.C. § 4013 and 28 C.F.R. § 0.111(o) apply to the present matter.  (D.E. 1 at PageID 5); *see* 28 C.F.R. § 0.111(o) ("The Director of the United States Marshals Service shall direct and supervise all activities of the U.S. Marshals Service including . . . [a]cquisition of adequate and suitable detention space, health care and other services and materials required to support prisoners under the custody of the U.S. Marshal who are not housed in Federal facilities.").  In its motion to dismiss, Defendant argued that "[t]he decisions of where to house an inmate, how to monitor prisoners, and how to allocate scarce resources involve[] choice, and are the type of choice anticipated by the discretionary function exception" and that the "exception shields the Marshals Service from FTCA claims based on the medical care received as a result of placing a plaintiff in a particular jail."  (D.E. 21 at PageID 119 (citations omitted).)  The inmate disagreed, contending that "[t]he discretionary function does not apply where a specific written statutory code or policy dictates a mandatory course of action."  (D.E. 30 at PageID 204.)

Defendant's conduct regarding Cole's housing, including initially placing him at the WTDF and transferring him to the USMCFP, falls under the discretionary function exception to the FTCA.  Under the first step, the Government's housing decisions were discretionary, as "there was room for judgment or choice."  *Kohl*, 669 F.3d at 940 (citation omitted).  Pursuant to "18 U.S.C. §§ 4002 and 4013, the USMS has discretion to contract with State and local correctional facilities to house federal prisoners."  *Cooper v. U.S. Marshals Serv.*, No. 3:09-cv-18, 2010 WL 925794, at *2 (E.D. Tenn. Mar. 9, 2010) (explaining that "[t]he USMS has a duty to 'provide for the safekeeping of' federal prisoners" (quoting 18 U.S.C. § 4086)); *see also United States v.*

*Espinoza-Arevalo*, No. 14-00332-02-CR-W-BP, 2015 WL 9598299, at *3 (W.D. Mo. Dec. 30, 2015) (explaining that the USMS "may enter into Intergovernmental Agreements with state and local facilities and contracts with private entities for the safekeeping, care, and subsistence of prisoners" (citing 18 U.S.C. §§ 4002, 4013)).    Moreover, 28 C.F.R. "[§] 0.111(o) gives the Marshals Service absolute discretion with regard to the housing of prisoners."    *Valdez v. U.S. Marshal Serv.*, No. 6:13-cv-2376, 2014 WL 4103204, at *4 & n.5 (W.D. La. Aug. 13, 2014) (determining that "[t]he USMS's decision with regard to [the] plaintiff's placement . . . is protected by the discretionary function exception since the determination of where to house a prisoner is discretionary," given that § 0.111(o) "clearly requires that the Director of the Marshals Service exercise his judgment when selecting which non-federal facilities will house federal prisoners"); *see also Jackson v. United States*, No. 1:10-CV-5 SNLJ, 2011 WL 504053, at *5 (E.D. Mo. Feb. 10, 2011) ("There is no question here that the responsibility for [the] plaintiff's day-to-day care is with the prison and not with the United States Marshal Service." (citing 28 C.F.R. § 0.111(o))).

Although Cole's placement at the WTDF and transfer to the USMCFP was discretionary, thus satisfying the first step, the exception applies because, under the second prong, such conduct by the Government was "'of the kind that the discretionary function exception was designed to shield' from liability."    *Kohl*, 669 F.3d at 940 (quoting *Rosebush*, 119 F.3d at 441).    Facility and cell "assignments necessarily implicate the balancing of competing policy considerations, such as the inmate's personal safety and medical needs, the facility's available resources, the safety and medical needs of other prisoners, the security and medical staff, and the public."    *Harper v. United States*, No. 5:08-CV-403-KKC, 2009 WL 3190377, at *4 (E.D. Ky. Sept. 30, 2009) (concluding that "[s]uch considerations unquestionably fall within the discretionary function exception," noting that "numerous courts have properly held that such decisions cannot be subjected to review

in a tort action under the FTCA" (citations omitted)); *see Valdez*, 2014 WL 4103204, at *4 n.5 (reasoning that C.F.R. § 0.111(o)'s "grant of authority is open-ended. It does not limit or guide the selection of a facility in any way so long as the space is adequate, suitable, 28 C.F.R. § 0.111(o), and meets minimum compliance criteria, 18 U.S.C. § 4013(c). This open-ended authority recognizes the Marshals Service's need 'to weigh concerns of expense, administration, payment, access to the premises, and a veritable plethora of factors before arriving at the decision to engage' the [local prison]."[12] (alteration in original) (quoting *Williams v. United States*, 50 F.3d 299, 310 (4th Cir. 1995))). "The decision to hire an independent contractor to render services for the United States is precisely the type of decision that the exception is designed to shield from liability because

_____

[12]Insofar as Plaintiff contends that the USMS should have ensured that any facility provided peritoneal dialysis so that he would not have needed to undergo the catheter removal and placement procedures on October 3, 2013, not only does such an argument fail under the discretionary exception, but it also runs contrary to his housing requests during his sentencing hearing on September 5, 2013.

At the hearing, counsel for Cole maintained that "[t]he plan, and the only legitimate plan that I think exists, is for him to switch to the hemodialysis. A new port. . . . That being done, then he can self report to a prison facility." (D.E. 21-1 at PageID 130.) While it is unclear whether counsel was arguing for Cole to self-report to a medical versus non-medical facility, such as the WTDF, Smothers nonetheless asserted that he would have to undergo the medical procedures to remove his peritoneal catheter and place a hemodialysis catheter before being housed at *any* prison facility—medical or otherwise. (*See, e.g.*, D.E. 21-1 at PageID 128, 130-31.) Based on her discussion "with his doctor at length," counsel explained that peritoneal dialysis "just absolutely cannot be done in a prison facility," (*Id.* at PageID 128). However, the inmate alleged in his Amended Complaint that the USMCFP could and did accommodate peritoneal dialysis once he was placed there. (D.E. 1 at PageID 4-5.)

Moreover, at the sentencing hearing, Smothers reflected that her "hope [was] that [self-reporting] w[ould] allow [Cole] adequate time to get those [two] procedures done." (D.E. 21-1 at PageID 131.) While the Government requested "that [Cole] be taken into custody at the conclusion of the proceeding" because he violated the terms of his release on bond, (*id.* at PageID 129, 143), Smothers maintained throughout the hearing that the inmate should be allowed to self-report and never contested the USMS's and the Court's indications that Cole would first have to be housed at the WTDF before receiving his designation to a medical facility. (*See id.* at PageID 166-74.) Accordingly, the USMS's placements of Cole at the WTDF and the USMCFP aligned with his housing requests at sentencing regarding his facilities' ability to accommodate and to treat his dialysis needs.

it involves exercising judgment based on considerations of policy, and . . . the award of contracts falls within the ambit of the discretionary function exception." *Cooper*, 2010 WL 925794, at *3 (quoting *Williams*, 50 F.3d at 310) (holding that the "court lack[ed] jurisdiction as to [the federal prisoner]'s claim that the USMS [was] liable under a theory of negligent entrustment" regarding his prison placement by the county sheriff's department).

The WTDF could accommodate Plaintiff's dialysis needs via hemodialysis, and the USMS affirmed that the WTDF could do so while Cole's designation to a medical facility was pending. (*See* D.E. 21-1 at PageID 157, 167-71; D.E. 17-2 at PageID 98; D.E. 1 at PageID 4-5.) The inmate never argued that the WTDF or the USMCFP was inadequately equipped to accommodate or treat his kidney issues; instead, he objects to the WTDF's inability to facilitate peritoneal dialysis, though it could and did accommodate hemodialysis for him. *See supra* note 12. Accordingly, "[b]ecause the housing of inmates . . . meet[s] both requirements, the discretionary-function exception applies" to Cole's opposition to his prison housing. *Staples v. Dewalt*, No. 07-CV-385-JBC, 2009 WL 1505560, at *8 (E.D. Ky. May 27, 2009) (citing *Montez v. Hearlson*, 359 F.3d 392 (6th Cir. 2004)).

### E. Compliance with Tenn. Code. Ann. § 29-26-122

Finally, as for Plaintiff's assertion that the USMS's "negligence . . . expos[ed] [him] to rep[e]titious surgeries and excessive medical process[es]," (D.E. 1 at PageID 5), the United States correctly maintained that the inmate's failure to "adhere[] to the requirements of Tennessee substantive law in bringing his suit . . . mandates dismissal."[13] (D.E. 21 at PageID 120.)

---

[13]The Sixth Circuit has held "that the misrepresentation exception to the waiver of immunity contained in 28 U.S.C. § 2680(h) does not preclude consideration of [a] plaintiff['s] claim of negligence" for medical malpractice. *Keir v. United States*, 853 F.2d 398, 411 (6th Cir. 1988); *see Brown*, 2008 WL 11415834, at *3 ("A separate claim for negligent or fraudulent misrepresentation is one that 'arises out of' misrepresentation for purposes of the FTCA.").

"Liability under the FTCA is determined according to the substantive law of the state in which the alleged negligence occurred." *Daniels v. United States*, No. 11-5009, 2011 WL 13202357, at *1 (6th Cir. Oct. 7, 2011) (citing 28 U.S.C. § 1346(b)). "Because the alleged acts in this case occurred in Tennessee, the law of Tennessee applies." *Id.*; *see Matthews*, 52 F. App'x at 809 (citing 28 U.S.C. § 1346(b)); (D.E. 21 at PageID 115.)

"At the time of [Cole]'s filing, Tennessee law defined a 'health care liability action' as a civil action 'alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based.'" *Burns*, 542 F. App'x at 463 (quoting Tenn. Code Ann. § 29-26-101). "All health care liability actions are governed by" the TMMA, "Tennessee's Medical Malpractice Act." *Burns*, 542 F. App'x at 463; *see Falkner v. United States*, No. 11-2982-STA-cgc, 2012 WL 2682789, at *7 (W.D. Tenn. July 6, 2012) ("Tennessee has codified a cause of action for medical malpractice, adding elements and procedural requirements that differ from a common law cause of action for negligence." (citing Tenn. Code Ann. §§ 29-26-115 to -122)). "The Tennessee Supreme Court has held that . . . 'the medical malpractice statute is applicable'" "when a claim alleges negligent conduct which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional . . . .'" *Driver v. Alexander*, No. 3:13-cv-364, 2013 WL 5886211, at *6 (M.D. Tenn. Oct. 31, 2013) (quoting *Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 641 (Tenn. 2003)).

Section 29-26-122 "requires that a 'certificate of good faith' indicating that a medical expert[14] has reviewed the claims must also be filed with a medical malpractice complaint, and

---

[14]"Unless the negligence would be obvious to the average juror," *Daniels*, 2011 WL 13202357, at *2, the TMMA "requires expert testimony regarding: (1) the recognized standard of acceptable professional practice in the defendant's community at the time of the alleged injury; (2)

failure to do so absent extraordinary cause shall result in dismissal of the complaint with prejudice." *Reed*, 508 F. App'x at 423 (quoting Tenn. Code Ann. § 29-26-122(a), (c)); *see Daniels*, 2011 WL 13202357, at *2 (explaining that "[i]f a plaintiff fails to file a certificate . . . the case is subject to dismissal with prejudice" (citing Tenn. Code Ann. § 29-26-122(c))).

Importantly, the Sixth Circuit has ruled that the TMMA's certificate of good faith requirement applies "to FTCA cases which arise in that state." *Burns*, 542 F. App'x at 463 (citing *Daniels*, 2011 WL 13202357, at *1); *see Love v. United States*, 530 F. App'x 564 (Mem.) (6th Cir. 2013) (per curiam) (affirming the district court's grant of the Government's motion under Fed. R. Civ. P. 12(c) due to the plaintiff's "fail[ure] to timely file a certificate of good faith").

Furthermore, "[t]he notice and certification requirements in any medical malpractice action in Tennessee are mandatory, *Brandon v. Williamson Med. Ctr.*, 343 S.W.3d 784, 790 (Tenn. Ct. App. 2010), and a trial court may exercise 'discretion to excuse compliance . . . only for extraordinary cause.'" *Reed*, 508 F. App'x at 423 (quoting Tenn. Code Ann. § 29-26-121(b)); *see Eiswert*, 2018 WL 3030094, at *7 (explaining that the Tennessee Supreme Court held in 2012 that § 29-26-122's "requirements . . . are substantive and mandatory, not procedural and directory" (citing *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 310 (Tenn. 2012))).

*Pro se* plaintiffs fare no better under Sixth Circuit precedent interpreting the TMMA's certificate of good faith requirement. In *Daniels v. United States*, the court affirmed the district court's dismissal of a *pro se* federal prisoner's FTCA claim alleging "negligent medical care" while incarcerated, as he "fail[ed] to file a certificate of good faith as required by § 29-26-122(a)."

---

whether [the] defendant acted or failed to act with ordinary and reasonable care under that standard; and (3) whether [the] plaintiff's injuries were proximately caused by the defendant, and would not have occurred without his negligent act or omission," *Burns*, 542 F. App'x at 463-64 (citing Tenn. Code Ann. § 29-26-115(a)-(b)).

2011 WL 13202357, at *2. Later, in *Reed v. Speck*, the Circuit relied on *Brandon v. Williamson Med. Ctr.*, where the Tennessee Court of Appeals "held that a *pro se* plaintiff's inability to secure expert testimony did not justify good cause to excuse her compliance with the filing requirements, for forces within a party's control will not substantiate a claim of excusable neglect." *Reed*, 508 F. App'x at 423 (citing *Brandon*, 343 S.W.3d at 790).

In response to Defendant's motion to dismiss, Cole argued that "[t]he Tennessee Health Care Liability Act does not apply," as he "did not raise claims of delayed or denied medical treatment or complaint [sic] about the standard of medical care concerning the multiple operations the Defendant expose[d] him to." (D.E. 30 at PageID 203.) However, to the extent that he blames "the USMS['s] negligent performance" as "[t]he cause of Plaintiff's needless risk of life and limb and pain and suffering," (D.E. 30 at PageID 205), from the multiple "rep[e]titious surgeries" he underwent, (D.E. 1 at PageID 5), the inmate is nonetheless barred from bringing such a claim under the FTCA because, as the Government correctly argued, his "complaint includes no certificate of good faith," (D.E. 21 at PageID 117).

In accordance with *Daniels*, which also involved a *pro se* prisoner's medical negligence claim, the TMMA's good faith certification requirement shields the Government from Cole's FTCA claim. 2011 WL 13202357, at *1-2, *cited with approval in Burns*, 542 F. App'x at 463; *see, e.g., Driver,* 2013 WL 5886211, at *7 ("conclude[ing] that, to the extent the [*pro se* prisoner's] complaint c[ould] be construed to state a cause of action for medical[]malpractice, any such claim [was] subject to dismissal with prejudice for failure to state a claim for which relief can be granted" because "the pleadings were not accompanied by a certificate of good faith as required by § 29-26-122").

Therefore, for the aforementioned reasons, Cole's sole claim under the FTCA is DISMISSED.  (D.E. 1; s*ee* D.E. 25 at PageID 192 n.2; D.E. 15 at PageID 84-85.)

## V.  APPEAL ISSUES

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must consider whether an appeal by Plaintiff in this case would be taken in good faith.  The good faith standard is an objective one.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  The same considerations that lead the Court to grant the motion to dismiss also compel the conclusion that an appeal would not be taken in good faith.  Thus, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Cole would not be taken in good faith.

Additionally, the Court must address the assessment of the $505 appellate filing fee if the inmate nevertheless appeals the dismissal of this case.  28 U.S.C. § 1913(1).  Certification that an appeal would not be taken in good faith does not affect an indigent, incarcerated plaintiff's ability to pay the filing fee using the installment procedures set forth in 28 U.S.C. § 1915(a)-(b).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997) (setting out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b)), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013).  Accordingly, if Plaintiff wishes to appeal and to take advantage of the installment procedures for paying the appellate filing fee, he must file an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

## VI.    CONCLUSION

In light of the foregoing, the Court GRANTS Defendant's motion to dismiss.  (D.E. 21.)

This matter is dismissed with prejudice.  *See* Tenn. Code Ann. § 29-26-122(c).

IT IS SO ORDERED this 3rd day of August 2018.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE
